UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ALYCE KAPLAN, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | No. 11 C 981 |
| v. | ) ) | Judge George M. Marovich |
| NEW TRIER HIGH SCHOOL, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alyce Kaplan ("Kaplan") filed against New Trier High School ("New Trier") a complaint in which she asserts claims under the Americans with Disabilities Act ("ADA"), the Illinois Human Rights Act ("IHRA") and Illinois common law. Defendant moves to dismiss the claims. For the reasons set forth below, the Court grants defendant's motion.

**I.     Background**

For purposes of this motion to dismiss, the Court takes as true the allegations in Kaplan's complaint and also considers the documents attached to and referenced in the complaint. Fed.R.Civ.P. 10(c).

Defendant New Trier is a public high school in Winnetka. Plaintiff Kaplan is a special education teacher. New Trier has employed plaintiff since 1984.

During the entirety of her employment with New Trier, Kaplan has had Type I (insulin-dependent) diabetes. Over time, Kaplan's diabetes has caused complications, including diabetic retinopathy. This has permanently reduced Kaplan's visual acuity in both eyes and has caused her to lose some peripheral vision. In addition, the diabetes has caused Kaplan to suffer joint swelling and pain and decreased tactile sensation.

These symptoms made it difficult for Kaplan to keep up with one of her duties, which was to document in writing the individualized education plans (IEPs) she developed with students' parents. It was difficult for Kaplan to type the IEPs during meetings with parents, so, prior to 2006, Kaplan gave parents handwritten IEPs and then mailed typewritten IEPs at a later date.

Over the years, Kaplan has asked for accommodations to assist her. When, in 2007, Kaplan had difficulty seeing the computer screens for New Trier's new IEP software, Kaplan asked to be assisted by a teacher's aide. In September 2007, Kaplan requested that she be allowed additional time to complete her IEPs. In December 2007, Kaplan requested the help of a temporary "scribe" to assist her with finishing her IEPs on time. On January 16, 2008, New Trier's Director of Special Education told Kaplan that she would be provided with 11"x17" large-font copies of her students' IEPs, along with fill-in-the-blank forms to write her IEPs by hand. Kaplan did not receive these accommodations.

What Kaplan received was criticism about her performance. On January 23, 2008, Kaplan met with Department Chair Ronald Simon ("Simon"). Simon criticized Kaplan for her delayed IEP paperwork and unexcused absences. The same day, Simon placed a disciplinary letter in Kaplan's personnel file.

One week later, Kaplan discussed possible accommodations with the Human Resources office. Kaplan was promised (by whom, it is not clear) a 28-inch computer monitor and a printer that could print 11"x17" documents. New Trier provided these accommodations within a month.

After that, New Trier continued to discipline Kaplan. On April 28, 2008, the Director of Curriculum place a disciplinary letter in Kaplan's personnel file. The letter accused Kaplan of

unilaterally changing a student's IEP.  On May 29, 2008, the Director of Human Resources placed another disciplinary letter in Kaplan's personnel file.  This letter accused Kaplan of not completing written IEPs on time.  On June 3, 2008, the Director of Special Education and the Director of Human Resources met with Kaplan and informed her that she had received an unsatisfactory rating on her biennial review and would be subject to a remediation plan.

Plaintiff continued to request accommodations.  In August 2008, Kaplan requested additional technological support.  (It is not clear from the complaint what, specifically, Kaplan requested.)  New Trier did not provide the requested accommodation.

Eventually (and it is not clear when), Kaplan took sick leave.  The complaint suggests that Kaplan never returned to her job at New Trier.  She alleges that, with a reasonable accommodation, she could.

On July 15, 2008, Kaplan filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination.  In her charge, Kaplan checked the boxes for discrimination based on retaliation and disability.  Kaplan listed January 23, 2008 as the "earliest" and June 26, 2008 as the "latest" dates of discrimination.  In the charge, she stated:

> I began my employment with Respondent in August of 1984.  My current position is Special Education Teacher.  Respondent is aware of my disability.  During my employment with Respondent, I have been disciplined.
>
> I believe I have been discriminated against because of my disability, in violation of the American [sic] with Disabilities Act of 1990.

(July 15, 2008 Charge).  On November 16, 2010, the Civil Rights Division of the U.S. Department of Justice issued plaintiff a notice of right to sue.

Kaplan filed this suit on February 11, 2011.  Kaplan asserts that New Trier failed to provide a reasonable accommodation in violation of the Americans with Disabilities Act

-3-

("ADA") (Count I) and the Illinois Human Rights Act ("IHRA") (Count III). In Counts II and IV, respectively, Kaplan alleges that she was retaliated against for requesting an accommodation in violation of the ADA and the IDHR. In Count V, Kaplan asserts a claim for intentional infliction of emotional distress.

Defendant moves to dismiss.

## II.  Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003).

Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. A complaint must include enough factual allegations to "raise a right to relief above a speculative level." *Twombly*, 127 S.Ct. at 1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health*

*Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S.Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

## III. Discussion

### A. Counts I and III are beyond the scope of Kaplan's EEOC charge

The ADA sets out administrative requirements that must be met before one may file a discrimination complaint in federal court. 42 U.S.C. §§ 2000e-5, 12117(a). The Supreme Court has explained that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002) (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)). "[P]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Threadgill v. Moore U.S.A.*, 269 F.3d 848, 851 (7th Cir. 2001) (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)).

Among the procedural requirements is the requirement that a plaintiff must first file a charge of discrimination with the EEOC. This requirement must be met with respect to claims brought under the Illinois Human Rights Act, as well. *McQueen v. City of Chi.*, Case No. 09 C 2048, 2011 WL 1113192 at *6 (N.D. Ill. March 23, 2011) (citing *Zaderaka v. Ill. Human Rights Comm'n*, 131 Ill.2d 172, 545 N.E.2d 684, 687-88 (Ill. S.Ct. 1989) (adopting Title VII framework

for IHRA claims)). A court may review only "those charges 'included in [the] EEOC charge ... or reasonably related to the allegations of the charge and growing out of such allegations.'" *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 270 (7th Cir. 2004) (quoting *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 689 (7th Cir. 2001)).

Defendant moves to dismiss Counts I and III on the grounds that plaintiff's claim for failure to accommodate was not included in her charge of discrimination. *Green v. National Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999). In *Green*, the Seventh Circuit rejected the argument that a plaintiff could file a claim for failure to accommodate after failing to mention the claim in an EEOC charge. The Seventh Circuit explained:

> As we have previously stated, a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA. In fact, the two types of claims are analyzed differently under the law. Therefore, they are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability.

*Green*, 197 F.3d at 898 (internal citations omitted); *see also Ortiz v. Elgin Sweeping Services, Inc.*, Case No. 10 C 936, 2010 WL 3034633 at *2 (N.D. Ill. July 29, 2010) ("Failure to accommodate claims are as a matter of law separate and distinct from discriminatory discharge claims–these claims are therefore not reasonably related to one another, nor is it expected that one of these claims would develop from an investigation into the other.").

The Court agrees with defendant that plaintiff's failure to accommodate claim is beyond the scope of the charge of discrimination she filed with the EEOC. The fact that Kaplan's failure to accommodate claim is separate from and not reasonably related to her discrimination claim is underscored by the allegations in the complaint as compared to the charge of discrimination. In her complaint, Kaplan alleges a number of times (including the fall of 2006, the spring of 2007,

May 2007, September 17, 2007, December 23, 2007 and January 16, 2008) when she requested an accommodation. Yet, Kaplan makes no mention of a failure to accommodate in her charge of discrimination, and she lists January 23, 2008 (i.e., long after she alleges she began requesting accommodations) as the "earliest" date of discrimination. Instead of mentioning a failure to accommodate, Kaplan's charge of discrimination asserts that New Trier discriminated against her in that she "ha[s] been disciplined." January 23, 2008, in fact, is the date Kaplan alleges that the first disciplinary letter was placed in her file. Thus, in Kaplan's charge, neither the dates of the alleged discrimination nor the type of discrimination described are reasonably related to a claim for failure to accommodate. Accordingly, the Court finds that Kaplan's failure to accommodate claims are beyond the scope of her charge of discrimination and must be dismissed.

The Court grants defendant's motion to dismiss as to Counts I and III and hereby dismisses those counts with prejudice.

### B. Kaplan fails to state a plausible claim for retaliation

Next, New Trier moves to dismiss Kaplan's retaliation claims (Counts II and IV) on the grounds that Kaplan has failed to allege sufficiently an adverse employment action.

Because the anti-retaliation provisions of the ADA are similar to Title VII's retaliation principles, courts look to Title VII cases when considering ADA retaliation claims. *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009). To have an actionable claim for retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Sante Fe*

*Railway Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted). The adversity must be "material" in order "to separate significant from trivial harms." *Id.* The standard is "general" because "the significance of any given act of retaliation will often depend upon the particular circumstances." *Burlington Northern*, 548 U.S. at 69.

Although federal courts still require notice pleading, to state a claim, a plaintiff must allege the "specific" adverse employment action. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008). On a motion to dismiss, courts now routinely consider whether the action the plaintiff challenges constitutes a material adverse employment action. *Gilhooly v. UBS Securities, LLC*, __ F. Supp.2d __, __, 2011 WL 663140 at *3 (N.D. Ill. 2011); *Harris v. Ill.*, 753 F. Supp.2d 734, 739-740 (N.D. Ill. 2010); *McGregor v. DePaul Univ.*, Case No. 10-cv-107, 2010 WL 4167965 at *5 (N.D. Ill. Oct. 13, 2010).

In her complaint, Kaplan alleges that defendant issued three disciplinary letters to Kaplan because she had delayed in submitting her paperwork, changed a student's IEP and failed to submit IEPs on time. In addition, Kaplan received an unsatisfactory rating on her biennial evaluation and was told she would receive remediation. The terms of the remediation plan are not included in the complaint. New Trier argues that these allegations do not constitute a material, adverse action.

The Seventh Circuit has concluded that negative performance evaluations and performance improvement plans are not, necessarily, material, adverse employment actions. *Cole v. Ill.*, 562 F.3d 812, 816-817 (7th Cir. 2009); *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998); *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996) ("There is little support for the

argument that negative performance evaluations alone can constitute an adverse employment action."). In *Sweeney*, the Seventh Circuit explained:

> The counseling statements are similar to negative performance evaluations, and arguably less significant. If we interpreted these simple personnel actions as materially adverse, we would be sending a message to employers that even the slightest nudge or admonition (however well-intentioned) given to an employee can be the subject of a federal lawsuit; a simple statutory prohibition against retaliation would be turned into a bizarre measure of extra protection for employees who–though they might genuinely need counseling–at one point complained about their employer. We also would be deterring employers from documenting performance difficulties, for fear that they could be sued for doing so.

*Sweeney*, 149 F.3d at 556-557. In *Cole*, the Seventh Circuit concluded that the performance improvement plan would not cause a reasonable employee to forego exercising her rights under the statute (there, the FMLA), because the terms of the plan were not onerous but rather included constructive assignments designed to improve the employees' work habits. That case leaves open the possibility that a performance improvement plan *could* be so onerous as to dissuade a reasonable employee from exercising her rights.

In this case, it is not clear from Kaplan's complaint what the terms of the remediation plan might be. Because a remediation plan is not, necessarily, a material, adverse action, Kaplan has not alleged a plausible claim. It remains possible, however, that she could. Accordingly, the dismisses Counts II and IV *without* prejudice and grants Kaplan leave to amend these claims.

Defendant's motion to dismiss is granted as to Counts II and IV.

### C. Kaplan's remaining state claim

In Count V, Kaplan asserts a claim for intentional infliction of emotional distress under state law. Because the Court has disposed of the only claims over which it had subject-matter jurisdiction, the Court exercises its discretion to dismiss the remaining state claims without prejudice. *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.").

## IV. Conclusion

For the reasons set forth above, the Court grants defendant's motion to dismiss. Counts I and III are dismissed with prejudice. Counts II, IV and V are dismissed without prejudice. Plaintiff is granted leave to file an amended complaint within 28 days.

                ENTER:

                George M. Marovich
                United States District Judge

DATED: May 31, 2011