UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ALYCE KAPLAN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | No. 11 C 981 |
| v. | ) |  |
|  | ) | Judge George M. Marovich |
| NEW TRIER HIGH SCHOOL, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**MEMORANDUM OPINION AND ORDER**

After the Court dismissed her original complaint, plaintiff Alyce Kaplan ("Kaplan") filed a three-count amended complaint against New Trier High School ("New Trier"). Kaplan asserts that New Trier retaliated against her in violation of the Americans with Disabilities Act ("ADA") and the Illinois Human Rights Act ("IHRA"). Kaplan also asserts a claim for intentional infliction of emotional distress. (The Court previously dismissed with prejudice Kaplan's accommodation claims, because she failed to exhaust her administrative remedies with respect to those claims.) Defendant moves to dismiss. For the reasons set forth below, the Court grants defendant's motion and grants plaintiff leave to amend.

**I.      Background**

For purposes of this motion to dismiss, the Court takes as true the allegations in Kaplan's amended complaint and also considers the documents attached to and referenced in the complaint. Fed.R.Civ.P. 10(c). The Court will not, however, consider documents attached to the parties' briefs. Fed.R.Civ.P. 12(d).

Defendant New Trier is a public high school in Winnetka. Plaintiff Kaplan is a special education teacher. New Trier has employed plaintiff since 1984.

During the entirety of her employment with New Trier, Kaplan has had Type I (insulin-dependent) diabetes. Over time, Kaplan's diabetes has caused complications, including diabetic retinopathy. This has permanently reduced Kaplan's visual acuity in both eyes and has caused her to lose some peripheral vision. In addition, the diabetes has caused Kaplan to suffer joint swelling and pain and decreased tactile sensation.

These symptoms made it difficult for Kaplan to keep up with one of her duties, which was to document in writing the individualized education plans (IEPs) she developed with students' parents. It was difficult for Kaplan to type the IEPs during meetings with parents, so, prior to 2006, Kaplan gave parents handwritten IEPs and then mailed typewritten IEPs at a later date. This was an accommodation to Kaplan. In the fall of 2006, Kaplan asked for another accommodation (a large, flat-screen monitor), and New Trier provided it.

Kaplan received some but not all of the accommodations she requested over the years. When, in 2007, Kaplan had difficulty seeing the computer screens for New Trier's new IEP software, Kaplan asked to be assisted by a teacher's aide. New Trier provided an aide, but the aide was not trained to use the computer program and, therefore, was unable to help Kaplan. In September 2007, Kaplan requested that she be allowed additional time to complete her IEPs, but Department Chair Ronald Simon ("Simon") declined. In December 2007, Kaplan asked Simon to provide Kaplan a temporary "scribe" to assist her with finishing her counseling reports (which were due December 21, 2007) on time. The Department Chair did not respond to the request.

Other accommodations were offered to Kaplan by New Trier but not provided. On January 8, 2008, Simon told Kaplan that either he or another teacher would help her input her by-then-late counseling reports. On January 16, 2008, New Trier's Director of Special

-2-

Education, Laurel Berman ("Berman"), told Kaplan that she would be provided with 11"x17" large-font copies of her students' IEPs, along with fill-in-the-blank forms to write her IEPs by hand. Kaplan did not receive these accommodations.

Instead of these accommodations, Kaplan received criticism about her performance. On January 23, 2008, Kaplan met with Simon. Simon "chastised" Kaplan for her delay in submitting her counseling reports. When Kaplan got up to leave, Simon told her in a loud, angry voice, "If you leave my office, there will be a very negative consequence which will affect your teaching at New Trier!" The same day, Simon put a disciplinary letter in Kaplan's personnel file. In the letter, Simon criticized Kaplan for her delayed IEP paperwork and unexcused absences.

One week later, Kaplan discussed possible accommodations with the Human Resources office. Kaplan was promised (by whom, it is not clear) a 28-inch computer monitor and a printer that could print 11"x17" documents. New Trier provided these accommodations within a month.

New Trier disciplined Kaplan again in April. On April 28, 2008, the Director of Curriculum, Cynthia Jeskowiak ("Jeskowiak"), placed a disciplinary letter in Kaplan's personnel file. The letter accused Kaplan of unilaterally changing a student's IEP. When Jeskowiak met with Kaplan to discuss the letter, Jeskowiak "wagged" her finger at Kaplan and said, "Don't you try to pass the buck and blame your actions on anyone else. You are a bad teacher and you have damaged your students. You have cost the district money and now you will pay the price." Jeskowiak also told Kaplan, "[T]here will be very negative consequences if you ever stray from the goals of a student's IEP again."

On May 29, 2008, the Director of Human Resources, Larry Lobert ("Lobert"), and Simon placed another disciplinary letter in Kaplan's personnel file. This letter accused Kaplan of not completing written IEPs on time.

The next day, Jeskowiak and Berman met with Kaplan. Jeskowiak, with a "menacing look on her face," said to Kaplan, "I can see you leaving an autistic student in a corner, playing games and doing whatever he wanted to on a computer all semester long." Berman and Jeskowiak criticized Kaplan for "relying on IEPs in teaching English, since students were given regular credit for English classes."

Finally, Kaplan was placed on a remediation plan. On June 3, 2008, the last day of the school year, Lobert and Berman met with Kaplan. They informed her that she had received an unsatisfactory rating on her biennial review and would be subject to a remediation plan. As part of the remediation plan, Kaplan was required to attend a remediation plan meeting in July 2008. Kaplan was also required to attend a summer workshop to learn about a computer program called Curriculum Mapper. Apart from these two requirements, the remediation plan "was never firmly established" and "constantly changed."

Kaplan alleges that the "stress Defendant caused Plaintiff by Defendant's . . . harassment of her during remediation and in the period before remediation caused Plaintiff to suffer depression and exacerbated the complications from her diabetes." Kaplan also alleges that she "went on sick leave in an effort to stabilize her condition." Kaplan has not returned to her job at New Trier, although she alleges that she could with a reasonable accommodation.

## II.     Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003).

Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. A complaint must include enough factual allegations to "raise a right to relief above a speculative level." *Twombly*, 127 S.Ct. at 1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S.Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

**III.    Discussion**

    **A.    Kaplan's retaliation claims**

New Trier again moves to dismiss Kaplan's retaliation claims (Counts I and II) on the grounds that Kaplan has failed to allege a material adverse action.

Although federal courts still require only notice pleading, to state a claim for retaliation, a plaintiff must specify a material adverse action. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) ("in order to prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a *(specified)* adverse employment action against the plaintiff on the basis of sex") (emphasis added).[1] For purposes of the ADA's retaliation provisions, an adverse action is one "that a reasonable employee would have found [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Sante Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted).[2] The adversity must be "material" in order "to separate significant from trivial harms." *Id.* The standard is "general" because "the significance of any given act of retaliation will often depend upon the particular

---

[1] On a motion to dismiss, courts now routinely consider whether the action the plaintiff challenges constitutes a material adverse action. *Gilhooly v. UBS Securities, LLC*, __ F. Supp.2d __, __, 2011 WL 663140 at *3 (N.D. Ill. 2011); *Harris v. Ill.*, 753 F. Supp.2d 734, 739-740 (N.D. Ill. 2010); *McGregor v. DePaul Univ.*, Case No. 10-cv-107, 2010 WL 4167965 at *5 (N.D. Ill. Oct. 13, 2010).

[2] Because the anti-retaliation provisions of the ADA are similar to Title VII's retaliation principles, courts look to Title VII cases when considering ADA retaliation claims. *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009).

circumstances." *Burlington Northern*, 548 U.S. at 69. The standard is also objective. As the Supreme Court explained:

> We refer to the reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings.

*Burlington Northern*, 548 U.S. at 68-69

The Court previously dismissed Kaplan's retaliation claims for failing to allege a material adverse action. In her original complaint, Kaplan alleged that defendant issued three disciplinary letters to Kaplan, gave her an unsatisfactory rating on her biennial evaluation and told her she would receive remediation. The terms of the remediation plan were not included in the complaint. The Court concluded that Kaplan had not alleged a material adverse action, because negative performance evaluations and performance improvement plans are not, without more, material adverse actions. *Davis v. Time Warner Cable of SE Wisc.*, 651 F.3d 664, 677 (7th Cir. 2011) ("Performance improvement plans, particularly minimally onerous ones like that here, are not, without more, adverse employment actions."); *Cole v. Ill.*, 562 F.3d 812, 816-817 (7th Cir. 2009); *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998); *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996) ("There is little support for the argument that negative performance evaluations alone can constitute an adverse employment action."). In *Sweeney*, the Seventh Circuit explained:

> The counseling statements are similar to negative performance evaluations, and arguably less significant. If we interpreted these simple personnel actions as materially adverse, we would be sending a message to employers that even the slightest nudge or admonition (however well-intentioned) given to an employee can be the subject of a federal lawsuit; a simple statutory prohibition against retaliation would be turned into a bizarre measure of extra protection for

> employees who–though they might genuinely need counseling–at one point complained about their employer. We also would be deterring employers from documenting performance difficulties, for fear that they could be sued for doing so.

*Sweeney*, 149 F.3d at 556-557. In *Cole*, the Seventh Circuit concluded that the performance improvement plan would not cause a reasonable employee to forego exercising her rights under the statute (there, the FMLA), because the terms of the plan were not onerous but rather included constructive assignments designed to improve the employees' work habits. Based on these cases, the Court concluded that Kaplan had not alleged a material adverse action and that, in order to do so, Kaplan would need to allege a remediation plan that was so onerous as to dissuade a reasonable employee from exercising her rights.

In her amended complaint, Kaplan does not allege an onerous remediation plan. According to her allegations, the remediation plan required Kaplan to attend a remediation plan meeting in July and to attend a training session for a computer program during her summer break. Beyond that, the remediation plan was "never firmly established." The remediation plan does not strike the Court as onerous, so it does not constitute a material adverse action for purposes of a retaliation claim. Plaintiff also alleges that the "stress" of the remediation plan caused her to suffer depression and exacerbated her diabetes symptoms. The Court does not see how a plaintiff's subjective emotional response to an otherwise-legal action would turn that action into a material adverse action, and the plaintiff has not pointed to any case that says it can. *See Burlington Northern*, 548 U.S. 68-69 (stating that whether an action is materially adverse must be judged from the perspective of a reasonable employee to avoid the uncertainty of judging a plaintiff's "unusual subjective feelings"); *cf. Mangano v. Sheahan*, Case No. 00 C 3953, 2002 WL 1821728 at *7 (N.D. Ill. Aug. 7, 2002) ("[W]e agree with Defendants that

Plaintiff's depression and resultant medical leave did not constitute an adverse employment action. Adverse employment actions . . . do not extend to the subjective impact of a particular action on an employee's psyche.").

Although plaintiff does not allege it in her complaint, in her brief, plaintiff argues that she was subjected to a "scheme to drive Plaintiff out of her job." Kaplan argues that New Trier engaged in "an effort to demean her and force her out of the school system." Plaintiff argues that the scheme was intended to "cause Plaintiff so much stress that she would be discouraged from demanding her rights under the ADA and the IHRA and/or would leave her position." In addition, plaintiff argues that the stress caused her to take sick leave, which "has turned into permanent unemployment and termination of benefits." It sounds like plaintiff is arguing that she was constructively discharged. She does not say so explicitly, and she does not include these allegations in her complaint (perhaps because plaintiff was still employed by the defendant when she filed her amended complaint). A constructive discharge constitutes a material adverse action for purposes of a retaliation claim. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 408-409 (7th Cir. 2008). Had Kaplan alleged in her amended complaint that she was constructively discharged, the Court would have concluded that she had stated a claim for retaliation.

As it stands, however, the Court once again concludes that plaintiff has not stated a claim for retaliation. Accordingly, the Court dismisses Counts I and II without prejudice.

### B. Kaplan's remaining state claim

In Count III, Kaplan asserts a claim for intentional infliction of emotional distress under state law. Because the Court has disposed of the only claims over which it has subject-matter jurisdiction, the Court exercises its discretion to dismiss the remaining state claims without prejudice. *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.").

## IV. Conclusion

For the reasons set forth above, the Court grants defendant's motion to dismiss. Counts I, II and III are dismissed without prejudice. Plaintiff is granted leave to file an amended complaint within 28 days.

ENTER:

*George M. Marovich*

George M. Marovich
United States District Judge

DATED: November 2, 2011